UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CRAIG J.,

               Plaintiff,

      v.                                        **DECISION AND ORDER**

                                                    20-CV-946S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

      1.      Plaintiff Craig J.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application with the Social Security Administration on June 30, 2014.  Plaintiff alleged disability beginning October 16, 2013, initially due to post-traumatic stress disorder ("PTSD"), chronic lower back pain, chronic neck pain, and bilateral degenerative hip disease (R.[2] at 17).  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On January 5, 2017, ALJ Paul Georger held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Timothy Janikowski appeared and testified.  (R. at 15, 35-69, 1535-69.)  At the time of the hearing, Plaintiff was 34 years

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.  This includes recasting references in the caption from earlier decisions involving this Plaintiff.

[2]Citations to the underlying administrative record are designated as "R."

old, with a high school education (R. at 1277, 1266, 17, 29).  Plaintiff worked as a power generator mechanic (heavy exertion level) and the ALJ found that Plaintiff was unable to return to this past relevant work (R. at 29, 1276-77).

4.      The ALJ considered the case *de novo* and, on March 13, 2017, issued the initial written decision denying Plaintiff's application for benefits.   After the Appeals Council denied Plaintiff's request to review the ALJ's initial decision, he filed his first action challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Don D. Bush, dated May 30, 2019, remanding the case for further administrative proceedings (R. at 1469), Craig [J.] v. Comm'r, No. 18CV85 (W.D.N.Y. May 30, 2019).

5.      On August 19, 2019, the Appeals Council vacated the ALJ's 2017 decision and directed further administrative proceedings consistent with Magistrate Judge Bush's Decision (R. at 1485).

6.      The ALJ conducted a second administrative hearing on February 21, 2020 (R. at 1469, 1285-1333).  On April 24, 2020, the ALJ issued another decision denying Plaintiff's claim for benefits (R. at 1263).

7.      After this remanded decision, Plaintiff filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

8.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 11, 13.)  Plaintiff filed a response on May 19, 2021 (Docket No. 14), at which time this Court took the Motions under

---

[3]The ALJ's April 24, 2020, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

advisement without oral argument.   For the reasons that follow, Plaintiff's Motion is **granted**, and Defendant's Motion is **denied**.

9.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the

3

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

12.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

14.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above in both decisions.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity from October 16, 2013, through the date of last insured, December 31, 2018.  (R. at 1266, 17.)  At Step Two, the ALJ found (on remand) that Plaintiff has the following severe impairment:  degenerative disc disease of the cervical and lumbar spine, degenerative joint disease and osteoarthritis of the bilateral hips, osteoarthritis of the bilateral feet and ankles, and PTSD.  <u>Id.</u> at 1266.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>Id.</u> at 1266-69.

15.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff can never climb ramps, stairs, ladders, ropes, or scaffolds can never balance, kneel, crouch, or crawl but can occasionally stoop.  Plaintiff can understand and remember simple, routine repetitive tasks but not at a production rate pace.  Plaintiff can make simple, work-related decisions.  He can have occasional interaction with supervisors, coworkers, and the general public (R. at 1269).

16.     At Step Four, the ALJ found Plaintiff is unable to perform his past relevant work.  (R. at 1276.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 1277-78.)  Because Plaintiff has additional limitations that impair his ability to perform sedentary work, the ALJ posed hypotheticals to the vocational expert of a claimant like Plaintiff in age, education, work experience, and RFC and the expert opined that the hypothetical claimant could perform such occupations as table worker, stuffer, and addressor clerk (all sedentary jobs) (R. at 1277-78).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 1278.)

17.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in evaluating his chiropractor's opinion (Docket No. 11, Pl. Memo. at 1, 15-21).  He next contends that the ALJ erred in evaluating multiple opinions from the Department of Veterans Affairs (or "VA") (id. at 1, 21-26).  Plaintiff argues that the RFC was not supported by substantial evidence.  Plaintiff points out errors in the physical findings in the RFC because the ALJ relied upon medical opinions rendered after the date of last insured, December 31, 2018 (id. at 1, 26-28).  The mental portion of the RFC also relied upon a non-examining opinion that should have been given less weight (id. at 1, 28-29).  For the reasons that follow, this Court accepts Plaintiff's arguments in consideration of VA medical evidence and reliance upon a post-coverage medical opinion.

18.     At issue is whether Plaintiff has disability coverage from the onset date of October 16, 2013, until the date last insured on December 31, 2018 (see R. at 1278).

19.     In February 2015, Plaintiff's chiropractor Alana Flitt, D.C., found that Plaintiff was capable of what the ALJ termed "significantly reduced range of sedentary exertion" (R. at 1274, 477-78).  Dr. Flitt observed that Plaintiff could sit for a half hour, stand or walk for a half hour at one time and sit for three hours and stand or walk for three hours during a workday (R. at 477).  Plaintiff could frequently lift up to 10 pounds and occasionally lift or carry 11-20 pounds and no more (R. at 477).  He could occasionally bend, squat, crawl, climb, and reach (R. at 477).  Dr. Flitt concluded Plaintiff would need an hour of rest in a workday beyond normal breaks and would miss two days per month due to his symptoms (R. at 478).  (Docket No. 11, Pl. Memo. at 12-13.)

20.     The ALJ gave some weight to the chiropractor's opinion despite in the ALJ's view being vague and not expressed in vocationally relevant terms (R. at 1274).  The ALJ did find that the opinion was consistent with treatment records to support a range of sedentary exertion (R. at 1274-75).

21.     Plaintiff argues the ALJ's assessment did not adequately explain what was meant by "some weight" for subsequent review (Docket No. 11, Pl. Memo. at 16).  He disputes whether Dr. Flitt rendered vague responses and did not use vocationally relevant terms (id.).  Further, this violated the mandate from the remand of this case to reweigh Dr. Flitt's opinion (id. at 20).

22.     Defendant Commissioner responds that the ALJ acted consistent with Magistrate Judge Bush's Order in weighing Dr. Flitt's opinion, giving greater weight in remand to that opinion than originally (Docket No. 13, Def. Memo. at 5-6; compare R. 28 (initial ALJ decision) with R. 1274-75 (remand decision)).  Defendant relies upon Magistrate Judge Bush's decision that Dr. Flitt's use of a fill in the blank questionnaire

was weak evidence at best (Docket No. 13, Def. Memo. at 8; R. at 1476), Morgan v. Berryhill, No. 15CV449, 2017 WL 6031918, at *3 (W.D.N.Y. Dec. 5, 2017) (Telesca, J.).

23.     Plaintiff replies that use of a fill in the blank or check box questionnaire should not discount an opinion (Docket No. 14, Pl. Reply Memo. at 3-4), e.g., Goble v. Colvin, No. 15CV6302, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016) (Siragusa, J.).

24.     Cases within this Circuit, including from this Court, Cory S. v. Comm'r, No. 19CV6608, 2021 WL 508082, at *6 (W.D.N.Y. Feb. 11, 2021) (Skretny, J.), and Magistrate Judge Bush's decision in this case (R. at 1476), vary on the acceptability of check box forms from treating physicians reporting their opinions.  As this Court found in Cory S., supra, 2021 WL 508082, at *6, and the cases cited therein, doctors may use those forms to express their opinions of a claimant's condition, see also Goble, supra, 2016 WL 3179901, at *5 (citing cases, checking the box is expression of the doctor's opinion).

25.     Reliance on such forms for medical opinions, however, have been rejected where the forms merely "offer little or nothing with regard to clinical findings and diagnostic results" or are inconsistent with findings in the doctor's own notes, Heaman v. Berryhill, 765 F. App'x 498, 501 (2d Cir. 2019) (summary Order); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized form held only marginally useful, critiquing the form) (see also R. at 1476, Magistrate Judge Bush citing Halloran); Morgan, supra, 2017 WL 6031918, at *3 (lack of supporting evidence for check box opinion supports ALJ's discount the opinion as well as its timing relative to claimant's initial treatment). Mere use of a check box form provides a "good reason" for giving the treating physician's

opinions less weight, Heaman, supra, 765 F. App'x at 501 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

26.     In Halloran, the Second Circuit held that the ALJ's opinion denied benefits without possibly developing the administrative record and failed to apply the treating physician rule despite the check box form by a treating physician, 362 F.3d at 31-32. Thus, that case did not turn on whether the doctor used a check box form.

27.     Here, Magistrate Judge Bush noted the use of the check box form (R. at 1476) but remanded because the ALJ gave little weight to Dr. Flitt's opinion merely because it came from a nonmedical source and did not consider the factors in weighing other source opinion under the pre-March 2017 Social Security standards (R. at 1477-78). Again, the fact that Dr. Flitt completed a check box form alone is not dispositive.

28.     The ALJ's first decision rejected Dr. Flitt's opinion merely because it came from a chiropractor (R. at 28, 1476-77). While the remand decision provides some evaluation of that opinion (noting longitudinal treatment history with Dr. Flitt), the ALJ now criticizes it for being vague and not following a function-by-function analysis (R. at 1274-75).

29.     The questionnaire Dr. Flitt answered asked functional assessment of Plaintiff in various physical categories. It is unclear from the ALJ's remand decision what more was expected. Dr. Flitt responded to the queries posed in the questionnaire, to "reflect what the plaintiff can do eight hours per day, five days per week on a regular and sustained basis" (R. at 477; see Docket No. 14, Pl. Reply Memo. at 2). Mere use of the form questionnaire does not disqualify Dr. Flitt's opinion.

30.     Defendant next argues Dr. Flitt's opinion conflicts with the opinion of consultative examiner, Dr. Donna Miller (R. at 472-75), who concluded Plaintiff had mild to moderate limitations lifting, bending, carrying, kneeling, and squatting (R. at 475; Docket No. 13, Def. Memo. at 9-10; cf. Docket No. 11, Pl. Memo. at 12).  The ALJ gave Dr. Miller's opinion great weight for finding moderate limitations but less weight to the mild limitation finding (R. at 1274) (that is, the findings of less severe restriction).  The ALJ gave partial weight to Dr. Miller's opinion, also faulting it for being vague and not providing a specific function-by-function analysis (R. at 1274).

31.     A non-examining medical opinion warrants less weight in evaluation, 20 C.F.R. § 404.1527 (see Docket No. 11, Pl. Memo. at 28).

32.     The RFC found Plaintiff able to perform sedentary work without climbing and occasional stooping (R. at 1269).  Dr. Flitt's opinion recognized that Plaintiff could perform sedentary work but at a reduced range.  The revised RFC (the initial found Plaintiff could perform light work, R. at 20) reflects the reconsideration of Dr. Flitt's opinion.  Thus, the ALJ did not err in rendering this RFC.  Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) on this ground is denied.

33.     In April 2015, Plaintiff underwent a series of compensation and pension examination (or "C&P") at the VA (R. at 667-78, 654-62, 620-25, 561-615; Docket No. 11, Pl. Memo. at 13-14).  This C&P examination conducted by Dr. Diane DenHaese revealed abnormal, reduced ranges of motion which caused functional loss, evidence of pain with weightbearing and objective signs of tenderness on palpation (R. at 670; Docket No. 11, Pl. Memo. at 13).  The examiner opined that Plaintiff's "hip joint pain . . . could significantly limit functional ability during flareups or when the joint is used repeatedly over a period of

10

time" (R. at 672; Docket No. 11, Pl. Memo. at 13).  A psychological C&P examination revealed that due to Plaintiff's PTSD he had "occupational and social impairment with reduced reliability and productivity" (R. at 655; Docket No. 11, Pl. Memo. at 13).

34.     Plaintiff had another C&P examination of his back in May 2015 that noted restricted range of motion, pain on weightbearing, reduced lower extremity sensation, and positive straight leg raise, with Plaintiff reporting flare ups and difficulty with lifting, bending, standing, sitting, and tying his shoes (R. at 620-25, 628; Docket No. 11, Pl. Memo. at 13).  Examiner Dr. DenHaese concluded that Plaintiff's flare ups could "significantly limit functional ability during flare ups or when the joint is used repeatedly over a period of time" (R. at 620-25; Docket No. 11, Pl. Memo. at 13-14).

35.     On July 30, 2015, Plaintiff had another C&P examination by PA Michael Rudzinski where Plaintiff reported ankle pain and strain caused by flare ups (R. at 575; Docket No. 11, Pl. Memo. at 14).  The examiner found reduced range of motion and marked tenderness to palpation in the right ankle (R. at 576; Docket No. 11, Pl. Memo. at 14).  The examiner also noted Plaintiff was limited to standing for 20-30 minutes, reduced range of motion in his left shoulder, and thus was limited in reaching and lifting (especially overhead reaching) (R. at 583, 587, 594; Docket No. 11, Pl. Memo. at 14).

36.     The ALJ, however, gave little weight to the VA doctors' opinions (R. at 1275).   The ALJ combined this assessment with assessment of the opinion of Dr. Cameron Huckell (R. at 1275, 1806-07, 1842 (Dr. Lawrence Adymy, D.C.)).   He faulted all opinions for not having a function-by-function limitations assessment and found the opinions were vague and conclusory (R. at 1275).

37.     Plaintiff first objects to gathering the VA opinions for collective assessment (Docket No. 11, Pl. Memo. at 22-23), Colon Medina v. Comm'r, 351 F. Supp.3d 295, 303 (W.D.N.Y. 2018) (Wolford, J.).

38.     Defendant now argues that the ALJ was following the direction of Magistrate Judge Bush in considering the C&P examinations together with the evaluation of Dr. Huckell (Docket No. 13, Def. Memo. at 14-15, citing R. at 1479).

39.     This Court agrees with Plaintiff that by combining the examinations considered collectively it is unclear which opinion the ALJ criticized (Docket No. 11, Pl. Memo. at 22).

40.     Dr. Huckell presented medical examination report from November 2019, noting limits in Plaintiff's range of motion for his hips (R. at 1806).  Dr. Huckell did not render a medical opinion but concluded that an MRI was medically necessary to assess Plaintiff's right hip (R. at 1807).  The ALJ claims that Dr. Huckell found that Plaintiff suffered 25% permanent impairment (R. at 1275, citing R. at 1806) but that evidence did not have quantified permanent impairment but concluded that Plaintiff was temporarily disabled due to his hips (R. at 1807).

41.     Combining Dr. Huckell's medical evidence with the VA C&P examinations in one assessment was in error.  The ALJ also cites a treatment note from chiropractor Dr. Adymy as part of Dr. Huckell's opinion (R. at 1275, citing "20F/8," at 1842) but Dr. Huckell made no reference to Dr. Adymy's treatment.  Each medical professional should be assessed on its own merit.

42.     Magistrate Judge Bush's direction to the ALJ was to "analyze the treatment records of Dr. DenHaese and PA Rudzinski to determine whether the RFC determination

is correct in light of these records" (R. at 1480).  By lumping those two C&P examiners' opinions (physical and psychological opinions) with Dr. Huckell's evaluation (and Dr. Adymy's treatment note), the ALJ did not conduct the ordered analysis of each source.

43.     Defendant relies upon the ALJ finding that these opinions lack a function-by-function analysis and inconsistency with the rest of the medical evidence and Plaintiff's daily activities (Docket No. 13, Def. Memo. at 15-16).  But by combining all these opinions under the same critique, it is unclear where these objections arise that the medical examination evidence was considered from each opinion source.  It appears that the ALJ on remand gave the VA opinions little weight without individual analysis.

44.     This Court recognizes that under the pre-March 2017 Social Security regulations, the Commissioner properly disregards the conclusions of another federal agency on the ultimate issue of disability, 20 C.F.R. § 404.1527(d) (R. at 1276).

45.     The ALJ on remand was directed to analyze the treatment record from the VA and has failed to do so.  Thus, Plaintiff's Motion for Judgment (Docket No. 11) on this ground is granted.

46.     Plaintiff argues that the ALJ improperly relied upon Dr. Nikita Dave's opinion of December 22, 2019 (R. at 1715-19, 1275) rendered one year after the date last insured. Dr. Dave opined Plaintiff had moderate limitation for repetitive squatting and crouching; mild limitations for standing, walking, and climbing; and mild to moderate limitations for bending, twisting, prolonged upright sitting without a back rest, repetitive bending forward, heavy lifting or carrying (R. at 1718-19).

47.     The ALJ gave great weight to Dr. Dave's assessment (R. at 1275).  But Plaintiff was last insured on December 31, 2018 (R. at 1266).

48.     Plaintiff argues that medical opinions rendered "well after a plaintiff's date of last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period," Durakovic v. Comm'r, No. 3:17CV894, 2018 WL 4039372, at *4 (N.D.N.Y. May 30, 2018) (Docket No. 11, Pl. Memo. at 26).

49.     Defendant counters that there was no evidence of Plaintiff's improvement during the year between the date last insured and Dr. Dave's assessment (Docket No. 13, Def. Memo. at 18-19).   If Dr. Dave's opinion is disregarded, Defendant points to Dr. Miller's 2014 assessment of mild to moderate limitation to still support the ALJ's finding (id. at 19).

50.     It was not appropriate for the ALJ to rely upon a post-insured assessment absent either a finding that the assessment reflected Plaintiff's condition when insured or a finding of interim change in Plaintiff's condition before the post-insured assessment.  A post-insured assessment has little or no probative value determining Plaintiff's disability during the period of October 16, 2013, through December 31, 2018.  Since remand is ordered on other grounds, the ALJ may revisit the physical RFC and support for that finding.

51.     Plaintiff's Motion (Docket No. 11) on this point is granted.

52.     Next, Plaintiff argues that the mental portion of the RFC is based upon a non-treating, non-examining opinion source (Docket No. 11, Pl. Memo. at 28-29), Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) (non-examiner's reports "deserve little weight in the overall evaluation of disability") (quotation omitted).  He concludes that little, if any weight, should have been applied to that appraisal (id. at 29, quoting Mitchell v. Berryhill, No. 14CV418, 2017 WL 1047360, at *1 (W.D.N.Y. Mar. 17, 2017) (Telesca, J.)).

53.     Defendant counters that state agency psychiatrists like the consultant here are highly qualified specialists who are experts on Social Security standards and the ALJ could give their opinions great weight (Docket No. 13, Def. Memo. at 19).

54.     The ALJ gave substantial weight to the functional assessment of state agency psychological consultant, G. Kleinerman, Ph.D. (R. at 1273, 76).  Despite a lack of treatment or examining history, the ALJ accepted this opinion as consistent with the medical evidence reflecting "grossly normal mental status findings" (R. at 1273).

55.     State agency consultant Dr. Kleinerman summarized the record, concluding (without examination of Plaintiff) that Plaintiff could perform simple work with low stress and limited contact with others (R. at 76).

56.     The ALJ erred in giving such weight to a state agency finding which summarized the psychological record to date.  Since this case will again be remanded, the ALJ may consider sources to find Plaintiff's mental RFC.

57.     Given the remand of this case, Plaintiff urges that this case returns for calculation of benefits (Docket No. 11, Pl. Memo. at 29-30; Docket No. 14, Pl. Reply Memo. at 8), see Smith v. Berryhill, 587 U.S. ___, ___ & n.21, 139 S.Ct. 1765, 1779-80, 1780 n.21, 204 L.Ed.2d 62 (2019) (remand for calculation of benefits where the Commissioner already had a chance to address the question).  Defendant did not address the form of remand, arguing that remand again is unwarranted because the ALJ complied with the mandate for the prior remand (see Docket No. 13, Def. Memo. at 21-22).

58.     Remand for calculation of damages would be appropriate only if the record is complete and substantial evidence indicates that Plaintiff is disabled, Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) (Docket No. 11, Pl. Memo. at 30).

15

59.     Although this would be the third remand of the case to the ALJ, the appropriate remand is for further determination of Plaintiff's application and not for calculation of benefits.   There remain issues for resolution whether there is substantial evidence of his disability because the ALJ in the prior remand did not consider the medical opinions as directed and leaving open the disability question.

60.     Therefore, remand is for further administrative proceedings and not yet for calculating damages.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     March 8, 2022
           Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge